WILLETT v WATERFORD CHARTER TOWNSHIP

Docket No. 265264. Submitted February 7, 2006, at Detroit. Decided May 2, 2006, at 9:10 a.m.

Robert Willett and others brought an action in the Oakland Circuit Court against Waterford Charter Township, seeking monetary compensation for damage to the plaintiffs' homes from sewage backups caused by an obstruction in a sewer line. The court, John J. McDonald, J., granted summary disposition for the defendant, ruling that the defendant was entitled to governmental immunity, that the obstruction was not a defect under MCL 691.1416(e), and that the plaintiffs failed to show that the defendant failed to remedy the alleged defect, a showing required by MCL 691.1417(3)(d). Willett appealed.

The Court of Appeals *held*:

1. The circuit court did not err in granting summary disposition for the defendant under MCR 2.116(C)(7) on the basis of governmental immunity because Willett failed to satisfy all the requirements of MCL 691.1417(3), specifically the requirements of showing that the defendant knew or should have known of the alleged defect, or that the defendant failed to take reasonable measures within a reasonable time to remedy the alleged defect. Although MCL 691.1417(2) does suggest that there are only two elements required to overcome governmental immunity in this case, it cannot be read to override the clear mandates of MCL 691.1417(1), (3), and (4). MCL 691.1417(2) seems to indicate that only a sewage disposal system event, as defined in MCL 691.1416(k), and an appropriate governmental agency are necessary to overcome governmental immunity. However, MCL 691.1417(3) provides for five additional requirements. Of these, the third requirement, a showing that the governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect and the fourth requirement, a showing that the governmental agency failed to take reasonable steps in a reasonable amount of time to remedy the defect, have not been met by Willett.

2. The trial court erred in determining that the obstruction in the sewer line caused by the introduction of a piece of concrete or

asphalt by a third party did not constitute a defect. MCL 691.1416(e) defines "defect" as a "construction, design, maintenance, operation, or repair defect." The obstruction was a defect—a fault, shortcoming, or imperfection—in the maintenance of the sewer line.

3. Reasonable minds could not differ that the defendant's location of the problem and resolution of the sewage backup of unknown cause within 2½ hours was reasonable. The plaintiff failed to satisfy the requirement in MCL 691.1417(3)(d) of a showing that the defendant response failed to take reasonable steps within a reasonable time to remedy the defect.

Affirmed.

MURPHY, J., concurring in the result only, disagreed with the analysis of the majority. Under MCL 691.1417(2), governmental immunity does not exist if there was an overflow or backup in a sewage disposal system and the overflow or backup constituted a sewage disposal system event and the governmental agency involved is an appropriate governmental agency. Because those elements existed in this case, there is no governmental immunity for the defendant. MCL 691.1417(3) and (4) relate to the burden of proof that a plaintiff carries when seeking compensation from an appropriate governmental agency for a sewage disposal system event. Summary disposition was appropriate because of the lack of proofs relative to the requirements of MCL 691.1417(3).

GOVERNMENTAL IMMUNITY — MUNICIPAL CORPORATIONS — SEWER SYSTEMS — LIABILITY FOR OVERFLOWS OR BACKUPS.

A person who seeks compensation from a governmental agency for property damage or physical injury caused by an overflow or backup of a sewage disposal system onto real property, in order to avoid governmental immunity, must show that a sewage disposal system event occurred, that the governmental agency is an appropriate governmental agency, that the sewage disposal system had a defect, that the governmental agency knew or should have known of the defect, that the governmental agency failed to take reasonable steps in a reasonable time to remedy the defect, and that the defect was a substantial proximate cause of the damage or injury, and must show reasonable proof of ownership and the value of damaged personal property and compliance with statutory notice requirements (MCL 691.1416[k], 691.1417[2], [3], and [4]).

*Schwartz Law Firm, P.C.* (by *Jonathan D. Sweik*), for Robert Willett.

*Cummings, McClorey, Davis & Acho, P.L.C.* (by *T. Joseph Seward* and *Karen M. Daley*), for Waterford Charter Township.

Before: DONOFRIO, P.J., and MURPHY and KELLY, JJ.

DONOFRIO, P.J. Plaintiff,[1] Robert Willett, appeals as of right an order granting summary disposition in favor of defendant, Waterford Charter Township, in this action arising out of sewage backups into plaintiff's home. On appeal, plaintiff argues that the trial court erred by (1) considering evidence, instead of the pleadings alone, in granting summary disposition under MCR 2.116(C)(8), (2) determining that defendant was entitled to governmental immunity under MCR 2.116(C)(7), (3) determining that an obstruction of defendant's sewer was not a defect under MCL 691.1416(e), and (4) ruling as a matter of law that the conduct of defendant's employees did not constitute a failure to remedy the alleged defect in the sewer. Because we conclude that the trial court did not err in granting summary disposition to defendant under MCR 2.116(C)(7) on the basis of governmental immunity, and because plaintiff failed to establish all the requirements of MCL 691.1417(3), specifically that defendant knew or should have known of the alleged defect or that defendant failed to take reasonable measures within a reasonable time to remedy it, we affirm.

I

This action arises out of a sewage discharge into plaintiff's basement. The sewer line serving plaintiff's home on Coseyburn Road was constructed in 1968 and

---

[1] Robert Willett, Jackie Da Pra, and Alisa Weaver filed the complaint below, but only Robert Willett is a party to this appeal.

is located within defendant's jurisdiction. On July 12, 2004, plaintiff's wife was at home at 3542 Coseyburn Road when she saw one of defendant's trucks outside their home. The truck stopped near the manhole cover next to their driveway and a man got out of the truck, lifted the manhole cover for a few seconds, and then put it back in place. Shortly thereafter, raw sewage forcefully flooded plaintiff's basement through the drains in the floor. Mrs. Willett called defendant to inform it of the sewage backup and was told that defendant was aware of a sewage problem in the area. She later spoke with Kathryn Wallace, the safety coordinator of the Waterford Department of Public Works (DPW), who informed her "that there was nothing that the township would do about the sewage backup . . . ." Another homeowner, Chris Hurst,[2] of 3491 Coseyburn, also reported a sewage backup at his residence to Wallace that day. Hurst's initial call to defendant on July 12, 2004, was at approximately 11:00 a.m.; Mrs. Willett's was at approximately 11:35 a.m.

Between approximately 11:00 a.m. and 11:15 a.m., defendant sent an employee, Randy Bunce, to investigate the sewage backups on Coseyburn. Between approximately 12:00 p.m. and 12:30 p.m., Bunce called defendant's office, and then Tom Coburn, defendant's superintendent of water and sewer, took geographic information system (GIS) drawings to Bunce. The GIS drawings show the location of the sewer, the location of manholes, and the direction of flow. Also, additional crew members arrived on site and found the sewer to be blocked on Walton Boulevard. The crew members opened manhole covers along Coseyburn Road, looking for a dry manhole. Once Coburn and Bunce had the GIS

---

[2] Chris Hurst resided at 3491 Coseyburn with Alisa Weaver, who was a plaintiff below but is not a party on appeal.

drawings at the site, they knew which manholes to open
to discover exactly where the sewer was blocked.

In the afternoon of the same day, defendant deployed
a "jet truck" in an attempt to dislodge the obstruction.
Defendant's crew dislodged the obstruction after going
through two tanks of water using the high-pressure jet.
After the obstruction was dislodged, the water in the
sewer went down immediately between approximately
1:00 p.m. and 1:30 p.m. Between approximately 1:30
p.m. and 2:15 p.m., Wallace conducted an investigation
of plaintiff's residence at 3542 Coseyburn, including
taking photographs and providing a sewage backup
report form.

Although defendant successfully "broke free" the
sewer obstruction, the evidence in the record does not
definitively indicate the cause of the sewer obstruction.
Defendant's position is as follows: "[S]omething was
introduced into the Waterford Township sewer line that
caused a backup in the sewer line. The item that was
placed into the sewer line is believed to be a piece of
concrete or asphalt."

Defendant prepared a digital video disc (DVD) of the
sewer segments at issue[3] in August 2004 using a scoping
mechanism and camera that traveled along the sewer's
length recording a continuous image of the inside. The
DVD does not show any apparent abnormality in the
sewers at issue, and the flow in the sewer segments,
though slightly variable, is well below capacity. The

---

[3] The DVD first shows sewer number 4727, which runs at a northeast-
southwest angle along Coseyburn Road, between manhole number 3823
and manhole number 3824 at the intersection of Coseyburn Road and
Plains Drive; the western end of sewer number 4727 is located east of
plaintiff's home. The DVD also shows sewer number 4680, which runs
north-south between manhole number 3780 on Coseyburn Road and
manhole number 3781, halfway between Coseyburn Road and Walton
Boulevard.

DVD also shows still photographs of the condition of a basement after a sewage backup.

The defendant's procedure allowed a person reporting a backup to file a claim using a standard claim form, and the township would then have someone look into the reason for the event. In August 2004, plaintiff submitted a damage claim. Defendant denied plaintiff's claim, citing MCL 691.1416 through MCL 691.1419, contending that plaintiff failed to show that defendant's sewage disposal system had a defect and that defendant knew or should have known of the defect and failed to take reasonable steps to correct the defect.

II

Plaintiff filed a complaint stating one count for violations of MCL 691.1416 *et seq*. Plaintiff alleged that he "inquired of the Waterford crew as to the cause of the sewage disposal event" and they told him "that a large piece of concrete or asphalt was blocking Waterford's sewage disposal system." Plaintiff asserted that he "later contacted [defendant's] Supervisor, Carl Solden, who confirmed that the blockage of the sewage disposal system was caused by a large piece of concrete or asphalt."

Defendant filed its motion for summary disposition under MCR 2.116(C)(7) and (8), arguing that it was entitled to governmental immunity for a backup of a sewage disposal system because plaintiff could not establish a defect in the system or that defendant knew or should have known of such a defect. In response, plaintiff argued that defendant was not entitled to governmental immunity because MCL 691.1417 provides an exception to immunity where the overflow or backup is a sewage disposal event and the governmental agency is an appropriate governmental agency.

During a hearing on defendant's motion for summary disposition, the parties acknowledged that no one really knew the exact nature of the obstruction that caused the backup. Plaintiff acknowledged that he was not alleging a construction or engineering defect in the sewer line, but alleged a negligent maintenance issue in either defendant's failure to maintain the sewer lines before the event or as a result of the manner in which defendant corrected the problem.

The trial court granted defendant's motion for summary disposition pursuant to MCR 2.116(C)(7) and (8), stating as follows in its opinion and order:

> Here, it is undisputed that the overflow or backup was caused by a foreign object of unknown origin that obstructed the line of the sewage disposal system. Plaintiff[] ha[s] not alleged another cause for the problem.
>
> The Court finds that the foreign object does not constitute a defect under the statute and has no relation to the construction, design, maintenance, operation or repair of the system. The foreign object did not become a part of the sewage disposal system itself because of the risk of damage that it may have created. There is no evidence that the system was not operating as intended or defective, merely that there was a temporary blockage to the system. Based upon the foregoing, Plaintiff[] cannot establish the essential element of a 'defect' and thus Defendant is entitled to governmental immunity.
>
> As to Plaintiff['s] other argument that Defendant's employee acted negligently in opening manhole covers which caused additional backups in [his] basement[], the Court finds that this alleged negligence does not create an event under the Act so as to create an exception to governmental immunity. Moreover, there is no evidence that additional damage was created by the act or that the employee's actions were grossly negligent. Accordingly, Defendant's motion for summary disposition is granted.

This appeal followed.

III

"Governmental immunity is a question of law that is reviewed de novo," and decisions on summary disposition are also reviewed de novo. *Pierce v City of Lansing*, 265 Mich App 174, 176; 694 NW2d 65 (2005), citing *Mack v Detroit*, 467 Mich 186, 193; 649 NW2d 47 (2002). Under MCR 2.116(C)(7), "all well-pleaded allegations must be accepted as true and construed in favor of the nonmoving party, unless contradicted by any affidavits, depositions, admissions, or other documentary evidence submitted by the parties." *Pierce, supra* at 177. But such materials "shall only be considered to the extent that the[y] . . . would be admissible as evidence . . . ." MCR 2.116(G)(6). "If no [material] facts are in dispute, or if reasonable minds could not differ regarding the legal effect of the facts, the question whether the claim is barred by governmental immunity is an issue of law." *Pierce, supra* at 177, citing *Maiden v Rozwood*, 461 Mich 109, 120-122; 597 NW2d 817 (1999).

IV

Plaintiff first argues that the trial court erred when it considered evidence outside the pleadings when it decided defendant's motion under MCR 2.116(C)(8). In that regard, plaintiff further argues that defendant's motion should fail because defendant did not bring the motion pursuant to MCR 2.116(C)(10). Defendant counters that plaintiff's argument under MCR 2.116(C)(8) is irrelevant for the reason that the trial court decided defendant is entitled to governmental immunity under MCR 2.116(C)(7) and, because no material facts are in dispute, the MCR 2.116(C)(10) analysis is encompassed within the trial court's MCR 2.116(C)(7) determination and need not be brought separately under MCR 2.116(C)(10).

The record reflects that defendant moved for summary disposition under both MCR 2.116(C)(7) and (8). As we stated above, for a motion under MCR 2.116(C)(7), "all well-pleaded allegations of fact must be accepted as true and construed in favor of the nonmoving party, *unless contradicted by any affidavits, depositions, admissions, or other documentary evidence . . . ." Pierce, supra* at 177 (emphasis added). Thus, a party making a motion under MCR 2.116(C)(7) can present evidence, and there is no impropriety in the trial court considering evidence when ruling on a motion under MCR 2.116(C)(7).

It is patently obvious that the trial court considered defendant's motion for summary disposition as involving governmental immunity, and, in fact, decided the case on that basis. Because the trial court did not decide the motion on the pleadings alone, it is clear that the trial court did not decide the motion under MCR 2.116(C)(8). Therefore, plaintiff's argument lacks merit, and the trial court did not plainly err when it considered "evidence outside of the pleadings" in deciding the motion for summary disposition.

The Legislature, in adopting MCL 691.1416 through MCL 691.1419, intended to provide limited relief to persons who suffer damages as a result of a "sewage disposal system event." MCL 691.1417(1). The Legislature provided in MCL 691.1417(2) that "[s]ections 16 to 19 abrogate common law exceptions, if any, to immunity for the overflow or backup of a sewage disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries caused by a sewage disposal system event regardless of the legal theory." Because the Legislature has provided that §§ 16 through 19 abrogate common-law exceptions to immunity, determinations under those sections are necessarily implicated in the immunity determination and

are susceptible to an MCR 2.116(C)(7) adjudication. And, where material facts are not in dispute in an action brought pursuant to MCL 691.1416 through MCL 691.1419, the MCR 2.116(C)(7) analysis parallels the MCR 2.116(C)(10) analysis and is a question of law for the trial court. Factual development under each of the subsections may be required.[4] Although factual development may be necessary, motions brought to defeat claims under MCL 691.1416 through MCL 691.1419 are properly raised under MCR 2.116(C)(7).

V

Plaintiff next argues that the trial court erred when it determined that defendant was entitled to governmental immunity. Plaintiff, relying on MCL 691.1417(2), specifically argues that defendant is not immune because the required elements to avoid immunity have been established, i.e., that the sewage backup was an event under the statutory definition and that defendant is an appropriate governmental agency under the statutory definition. Defendant responds that in order to avoid governmental immunity, plaintiff was required by MCL 691.1417(3) to show that defendant was an appropriate governmental agency, the disposal system had a defect, the agency knew or should have known of the defect, the agency failed to take reasonable steps in a reasonable time to remedy the defect, and the defect was a substantial proximate cause of the injury. Defendant asserts that, because plaintiff was unable to establish a defect in the sewage disposal system and could not establish that defendant knew of a defect or failed to take steps to remedy it, the trial court properly found defendant was entitled to governmental immunity.

---

[4] See MCL 691.1417(2) and MCL 691.1416(k) and (l).

"When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute." *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002). To effectuate the Legislature's intent, the Court must first examine the statute's language, which, if clear and unambiguous, must be enforced as written. *Laurence G Wolf Capital Mgt Trust v City of Ferndale*, 269 Mich App 265, 270; 713 NW2d 274 (2005); *Wesche v Mecosta Rd Comm*, 267 Mich App 274, 279; 705 NW2d 136 (2005). "We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain Legislative intent only if the statutory language is ambiguous." *Pohutski, supra* at 683. A statute should not be interpreted to render any statutory language surplusage or nugatory. *Id.* at 684.

The Legislature promulgated MCL 691.1416 through MCL 691.1419 "[t]o afford property owners, individuals, and governmental agencies greater efficiency, certainty, and consistency in the provision of relief for damages . . . caused by a sewage disposal system event . . . ." MCL 691.1417(1). Under MCL 691.1417(2), "[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency." A "sewage disposal system event" is defined, in pertinent part, as "the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). An "appropriate governmental agency" is defined as "a governmental agency that, at the time of the sewage disposal system event, owned or operated, or directly or indirectly discharged into, the portion of the sewage disposal system that allegedly caused damage . . . ." MCL 691.1416(b).

Although plaintiff relies on MCL 691.1417(2) in arguing that immunity can be avoided by a claimant showing only two things — a disposal system event and that the defendant is an appropriate governmental agency — MCL 691.1417(1) broadly requires that "a claimant . . . shall comply with this section," and MCL 691.1417(3) imposes *several* requirements for a claimant to avoid governmental immunity for a sewage disposal system event. MCL 691.1417(3) provides:

> If a claimant . . . believes that an event caused . . . injury, the claimant may seek compensation . . . if the claimant shows that all of the following existed at the time of the event:
>
> (a) The governmental agency was an appropriate governmental agency.
>
> (b) The sewage disposal system had a defect.
>
> (c) The governmental agency knew, or in the exercise of reasonable diligence should have known, about the defect.
>
> (d) The governmental agency, having the legal authority to do so, failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect.
>
> (e) The defect was a substantial proximate cause of the event and the property damage or physical injury.

A "defect" is defined as "a construction, design, maintenance, operation, or repair defect." MCL 691.1416(e). Accordingly, under MCL 691.1417(3), the plaintiff must show the foregoing *five* elements in order to avoid governmental immunity. Plaintiff has provided no reason for us to believe that MCL 691.1417(2) is intended to obliterate the requirements of MCL 691.1417(3). And plaintiff's reading of MCL 691.1417(2) ignores MCL 691.1417(4), which provides additional requirements:

> In addition to the requirements of subsection (3), to obtain compensation for property damage or physical injury from a governmental agency, a claimant must show both of the following:
>
> (a) If any of the damaged property is personal property, reasonable proof of ownership and the value of the damaged personal property . . . .
>
> (b) The claimant complied with section 19 [concerning notice of the claim].

The Legislature unmistakably set forth the requirements that a claimant must satisfy in order to assert a claim for a sewage disposal system event and clearly enumerated them in MCL 691.1417(3). While plaintiff points to MCL 691.1417(2), which does suggest that there are only two elements required to overcome immunity, MCL 691.1417(2) cannot be read to override the clear mandates of MCL 691.1417(1), (3), and (4). It would be an illogical reading of § 1417 to conclude that the two elements required to overcome immunity stated in subsection 2 render superfluous the carefully detailed factors set forth in subsections 3 and 4. *Pohutski, supra* at 684. Accordingly, plaintiff was required to satisfy the five elements required under MCL 691.1417(3).

Plaintiff next argues that the trial court erred in determining that the obstruction of the sewer line was not a defect as contemplated in MCL 691.1417(3)(b). Plaintiff conceded at the hearing that there was no construction or design defect. Rather, plaintiff contended that there was a maintenance defect. Specifically, plaintiff asserted that defendant failed to keep the sewer in its normal, free-flowing condition. In other words, plaintiff claimed an imperfection in defendant's maintenance of the sewer.[5] Thus, under the facts pre-

---

[5] Plaintiff included the defect allegation in the complaint, albeit without the specification of it being a maintenance defect. Accordingly, taking

sented, the question before us is whether a foreign object believed to be concrete or asphalt introduced into the sewer system by an unknown third party creating an obstruction in the sewer constitutes a maintenance defect.

The statute defines "defect" as "a construction, design, maintenance, operation, or repair defect." MCL 691.1416(e). The statute does not further define the terms used to define "defect." Given that the definition of "defect" itself uses the term "defect," and that the second use of the term is undefined in the statute, we reference dictionary definitions. *Laurence G Wolf, supra* at 271; *Pierce, supra* at 178. A "defect" is defined as "a fault or shortcoming; imperfection." *Random House Webster's College Dictionary* (1997). "Maintenance" is defined as "the act of maintaining," and "maintain" is defined as: "1. to keep in existence or continuance; preserve. 2. to keep in due condition, operation, or force. 3. to keep in a specified state, position, etc." *Id.*

The record reflects that someone introduced a large concrete or asphalt object into defendant's sewer line that caused a backup in the sewer system. There is no allegation or evidence that defendant in any way created or contributed to the obstruction. Defendant's response to the obstruction indicates that it viewed the obstruction as a fault or a defect requiring immediate maintenance. After being notified of the sewer backup, defendant deployed a jet truck to attempt to dislodge the obstruction and restore proper operation of its sewer lines. Thus, under the plain language of the statute, there was evidence to support plaintiff's allegation that the "sewage disposal system had a defect." MCL 691.1417(3)(b). We point out that plaintiff did not

the pleadings in a light most favorable to the nonmoving party, *Pierce, supra* at 177, plaintiff alleged a maintenance defect.

allege that defendant did anything to create the obstruction, or that even an ideal daily maintenance program could have prevented this obstruction. The record displays that, apparently, someone placed a large obstruction, believed to be concrete or asphalt, in the sewer lines. Reasonable minds could not differ that no reasonable maintenance program could have prevented the rogue act of a third party in creating the "defect"; however, the Legislature has not included a "fault" element in MCL 691.1417(3)(b). The Legislature required only that a plaintiff allege the mere existence of a "defect" in the sewage disposal system according to the plain language of MCL 691.1417(3)(b). Thus, we must apply the plain and unambiguous language of the statute and, because the facts are not in dispute, conclude that the obstruction of the sewer constituted a defect under MCL 691.1417(3)(b) and that the trial court erred in finding, as a matter of law, that the obstruction by a foreign object did not constitute a defect.

As we stated above, plaintiff was required to satisfy *all* the factors listed in MCL 691.1417(3).[6] The next required element at issue is that defendant knew or in the exercise of reasonable diligence should have known about the defect. MCL 691.1417(3)(c). Plaintiff merely alleged that defendant "knew, or in the exercise of reasonable diligence should have known, about the defect," but failed to present any evidence to support his allegation. After reviewing the record evidence, we can find no factual basis to conclude that defendant could have known about this obstruction before or when it occurred because the obstruction was apparently the result of a unilateral act of a third party.

---

[6] The parties do not contest MCL 691.1417(3)(a), that defendant was an appropriate governmental agency.

The next required element at issue is that plaintiff must prove that defendant "failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect." MCL 691.1417(3)(d). Again, although plaintiff so alleged in his complaint, plaintiff failed to present evidence to support his allegation. In fact, contrary to plaintiff's allegations, the evidence indicates that within minutes after receiving notice of the problem, defendant dispatched its crew to the area, and the crew remedied the problem promptly. In the early afternoon of the same day that plaintiff's wife reported the sewage backup, defendant deployed a jet truck that dislodged the obstruction. Defendant accomplished this by approximately 1:30 p.m., after receiving the telephone call regarding the problem at approximately 11:00 a.m. We conclude that reasonable minds could not differ that $2^1/2$ hours to locate and resolve a sewer backup of unknown cause or origin is a reasonable amount of time. Thus, plaintiff failed to support the fourth required element with evidence.

Plaintiff next argues that the trial court erred in determining that the response of defendant's crew did not constitute a failure to take reasonable steps to correct or remedy the maintenance defect. A careful review of the trial court's findings reveals that the trial court never found that the response of defendant's crew did not constitute a failure to take reasonable steps to correct a maintenance defect. Rather, the trial court held: "As to Plaintiffs' other argument that Defendant's employee acted negligently in opening manhole covers which caused additional backups . . . the Court finds that this alleged negligence does not create an event under the Act so as to create an exception to governmental immunity."

In this instance, a "sewage disposal system event," or simply an "event," is "the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). The trial court provided no reasoning for its conclusion that alleged negligence in opening manholes, causing additional backups, was not an event. The definition of "event" does not exclude a backup caused by an effort to remedy (or to find the cause of) a prior or existing backup. MCL 691.1416(k). The trial court therefore erred in concluding as a matter of law that the alleged additional backups, allegedly caused by opening manhole covers, were not "events."

However, in order to establish liability, a claimant asserting an event must show that defendant "failed to take reasonable steps in a reasonable amount of time to repair, correct, or remedy the defect." MCL 691.1417(3)(d). Here, plaintiff lacks evidence that defendant failed to respond promptly and reasonably to remedy the alleged maintenance defect. Defendant successfully dislodged the obstruction, and the "water went down immediately," only about 2½ hours after defendant received the first notice. Thus, reasonable minds could not differ that defendant's response was reasonably prompt and effective.

Plaintiff argues that the method initially employed by defendant in attempting to correct the maintenance defect, i.e., opening the manhole covers without the benefit of the GIS drawings, was unreasonable. Plaintiff has proffered no evidence that opening the manhole covers was anything other than an initial response and no evidence that any other method could have been employed before the GIS drawings arrived. Reasonable minds could not differ that opening manhole covers to search for the unknown problem was a logically sound response. Also, plaintiff provided no evidence to illus-

trate how merely opening manhole covers could have caused an additional sewage backup that would not otherwise have occurred. Plaintiff lacks any evidence that opening the manhole covers caused further sewage backups that would not otherwise have occurred by reason of the existing obstruction. And plaintiff fails to specify how the successful dislodging could have been accomplished more promptly. Accordingly, plaintiff lacks evidence that defendant failed to take reasonable steps within a reasonable time, a showing required by MCL 691.1417(3)(d).

Although the trial court incorrectly concluded that alleged negligence in opening manholes, causing additional backups, was not an "event," the trial court reached the right result for the wrong reason, because plaintiff failed to show that defendant failed to take reasonable steps within a reasonable time to remedy the alleged maintenance defect in the sewer. *Gleason v Dep't of Transportation*, 256 Mich App 1, 3; 662 NW2d 822 (2003).

We conclude that the trial court properly held that plaintiff failed to satisfy the requirements of MCL 691.1417(3). Even though the trial court was incorrect in its finding that the obstruction failed to constitute a "defect" in the sewage disposal system under the language of MCL 691.1417(3)(b), because plaintiff failed to meet all the requirements of MCL 691.1417(3), the trial court reached the right result for the wrong reason and summary disposition was appropriate. *Gleason, supra* at 3.

VI

The trial court did not err in considering "evidence outside of the pleadings" in granting defendant's motion for summary disposition because the motion was

granted under MCR 2.116(C)(7), not (C)(8). The trial court did not err in granting summary disposition to defendant under MCR 2.116(C)(7) on the basis of governmental immunity because plaintiff failed to meet all the requirements of MCL 691.1417(3), specifically a showing that defendant knew or should have known of the alleged defect or that defendant failed to take reasonable measures within a reasonable time to remedy it.

Affirmed.

KELLY, J., concurred.

MURPHY, J. (*concurring in the result only*). Because I disagree with the analytic framework utilized by the majority, I write separately to express my view regarding governmental immunity under MCL 691.1417.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Kreiner v Fischer*, 471 Mich 109, 129; 683 NW2d 611 (2004). An issue posing a question of statutory construction is likewise reviewed de novo. *Id.* Moreover, the applicability of governmental immunity is a question of law that this Court reviews de novo. *Pierce v City of Lansing*, 265 Mich App 174, 176; 694 NW2d 65 (2005).

Our primary task in construing a statute is to discern and give effect to the intent of our Legislature. *Shinholster v Annapolis Hosp*, 471 Mich 540, 548-549; 685 NW2d 275 (2004). The words contained in a statute provide us with the most reliable evidence of the Legislature's intent, and this Court must give meaning to every word, phrase, and clause in the statute. *Id.* at 549. We must consider the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. *Id.* Where the wording or

language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and the statute must be enforced as written. *Id.* "A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself." *Roberts v Mecosta Co Gen Hosp*, 466 Mich 57, 63; 642 NW2d 663 (2002). The Michigan Supreme Court has reiterated often and clearly that the courts of this state may read nothing into an unambiguous statute. See, e.g., *Halloran v Bhan*, 470 Mich 572, 577; 683 NW2d 129 (2004); *Neal v Wilkes*, 470 Mich 661, 670 n 13; 685 NW2d 648 (2004) ("Plaintiff . . . is adding words to the act that simply are not there."); *State Farm Fire & Cas Co v Old Republic Ins Co*, 466 Mich 142, 146; 644 NW2d 715 (2002) (judiciary's role includes interpreting statutes, not writing them); *Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002).

The first sentence of MCL 691.1417(2) provides that "[a] governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency." The plain and unambiguous language of the statute clearly expresses that if an overflow or backup is a sewage disposal system event and the governmental agency is an appropriate governmental agency, there is no protection under the doctrine of governmental immunity. The majority's interpretation of the statute effectively adds language to MCL 691.1417(2) that simply does not exist. Under the majority's construction, MCL 691.1417(2), contrary to its plain language, actually means that a governmental agency is immune from tort liability for the overflow or backup of a sewage disposal system unless the overflow

or backup is a sewage disposal system event and the
governmental agency is an appropriate governmental
agency *and the claimant satisfies MCL 691.1417(3) and
(4)*. Because we are to read nothing into an unambiguous statute and are not permitted to add words to the
statute, the majority's interpretation of MCL 691.1417
is inconsistent with the governing principles of statutory construction.

The second sentence of MCL 691.1417(2) provides
that "[s]ections 16 to 19 [MCL 691.1416 through MCL
691.1419] abrogate common law exceptions, if any, to
immunity for the overflow or backup of a sewage
disposal system and provide the sole remedy for obtaining any form of relief for damages or physical injuries
caused by a sewage disposal system event regardless of
the legal theory." I see nothing in this broad, general
language that would allow this Court to find that MCL
691.1417(3) and (4) necessarily relate to the issue of
governmental immunity, where such a reading would
conflict with the explicit language of the first sentence
of MCL 691.1417(2). The second sentence of MCL
691.1417(2) speaks not only of immunity, but also
touches on the statutory scheme providing the sole
remedy for obtaining damages for sewage overflows and
backups. With this in mind, I would find that a fair and
reasonable construction of MCL 691.1417(3) and (4)
merely ties these provisions to the burden of proof that
must be established by a plaintiff seeking damages for a
sewage disposal system event, while the first sentence
of MCL 691.1417(2) addresses the initial threshold
question of immunity and whether a compensable event
occurred. Such an interpretation would harmonize the
provisions of MCL 691.1417 and avoid conflict, along
with giving effect to the statute's plain language,
thereby carrying out the Legislature's intent. See *Macomb Co Prosecutor v Murphy*, 464 Mich 149, 159; 627

NW2d 247 (2001) ("We construe an act as a whole to harmonize its provisions and carry out the purpose of the Legislature."); *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998) (if statutes can be construed in a manner that avoids conflict, then that construction should control the analysis).

I recognize that ultimately my dispute with the majority on this issue has little substantive meaning because a plaintiff will need to establish all the requirements of MCL 691.1417(2), (3), and (4) in order to recover, and if the requirements are not established, the governmental agency will not be liable, regardless of whether the agency avoided liability on the basis of governmental immunity or simply on the basis of failure to prove the elements of the cause of action. However, I do believe that we should set forth the correct analytic framework as indicated by the statutory language because the proper framework can have a bearing on a case. For example, a final judgment or order in a civil action is defined, for the purposes of determining whether a governmental defendant has an appeal of right, as "[a]n order denying governmental immunity to a governmental party, including a governmental agency, official, or employee[.]" MCR 7.202(6)(a)(v); see also *Newton v Michigan State Police*, 263 Mich App 251, 257-259; 688 NW2d 94 (2004). Therefore, whether a governmental agency has an appeal as of right from a denial of a motion for summary disposition, versus having to file an application for leave to appeal or await the completion of a trial, can be affected by the legal basis given by the trial court for denying the motion, such as the failure to establish governmental immunity or the existence of a genuine issue of material fact with respect to the elements of the cause of action outside the context of immunity.

Here, there does not appear to be any dispute that the sewage backup or overflow was a "sewage disposal system event" as that language is defined in MCL 691.1416(k),[1] nor is there a dispute that defendant is the "appropriate governmental agency" as defined in MCL 691.1416(b) for the purposes of the lawsuit. Accordingly, defendant was not protected by governmental immunity. Nonetheless, defendant could still avoid liability if plaintiff failed to state a claim or failed to create a genuine issue of material fact relative to the requirements of MCL 691.1417(3) and (4). For the reasons stated by the majority relative to the lack of proof under MCL 691.1417(3), I concur that summary disposition for defendant was appropriate.

---

[1] " 'Sewage disposal system event' or 'event' means the overflow or backup of a sewage disposal system onto real property." MCL 691.1416(k). The statute also provides that certain sewage overflows or backups do not constitute sewage disposal system events, but those exceptions are not applicable here.