**Michigan Supreme Court**
**Lansing, Michigan**

# Opinion

| Chief Justice: | Justices: |
| --- | --- |
| Clifford W. Taylor | Michael F. Cavanagh |
| | Elizabeth A. Weaver |
| | Marilyn Kelly |
| | Maura D. Corrigan |
| | Robert P. Young, Jr. |
| | Stephen J. Markman |

FILED APRIL 3, 2008

DANIEL JOHN WESCHE and BEVERLY
WESCHE,

Plaintiffs-Appellants,

v                                                    No. 129282

MECOSTA COUNTY ROAD
COMMISSION,

Defendant-Appellee.

---

REBECCA KIK and ROBERT KIK,
Individually and as Personal
Corepresentatives of the ESTATE of
SHARON ANN LEELANI KIK,

Plaintiffs-Appellees,

v                                                    No. 132849

JOHN-CHRISTOPHER SBRACCIA,
KINROSS CHARTER TOWNSHIP EMS,
and KINROSS CHARTER TOWNSHIP,

Defendants-Appellants.

---

BEFORE THE ENTIRE BENCH

CORRIGAN, J.

We granted leave to appeal in these two cases to determine whether the motor-vehicle exception to governmental immunity, MCL 691.1405, authorizes a claim for loss of consortium against a governmental agency. The motor-vehicle exception permits recovery of damages only for "bodily injury" and "property damage." A loss of consortium is not a physical injury to the body. Moreover, a claim for loss of consortium is an independent, albeit derivative, cause of action. Therefore, the motor-vehicle exception does not waive immunity for such a claim.

In *Kik*, we also must determine whether the wrongful-death act, MCL 600.2922, permits a loss-of-consortium claim against a governmental agency. The availability of a wrongful-death action hinges on whether the injured party would have been entitled to maintain an action and recover damages had a death not ensued. Because the motor-vehicle exception would not have permitted plaintiffs to pursue a loss-of-consortium claim if their daughter's death had not ensued, plaintiffs are also barred from pursuing such a claim in their wrongful-death action.

Finally, in *Kik*, we must also resolve whether a governmental employee is immune from liability for loss-of-consortium damages. We hold that a governmental employee is not immune if the plaintiff can satisfy all the requirements set forth in the gross-negligence exception to the governmental immunity of employees.

2

Accordingly, we affirm the judgment of the Court of Appeals in *Wesche*, affirm in part and reverse in part the judgment of the Court of Appeals in *Kik*, and remand both cases for further proceedings not inconsistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

### A. *WESCHE*

Plaintiff Daniel Wesche was seated in his automobile at a red light when defendant Mecosta County Road Commission's vehicle, a Gradall hydraulic excavator,[1] rear-ended him. Plaintiffs alleged that the accident injured Daniel's cervical spine. Plaintiff Beverly Wesche, Daniel's wife, was not present at the accident scene and suffered no bodily injury. She claimed a loss of consortium as a result of Daniel's injury.[2]

The trial court granted summary disposition under MCR 2.116(C)(7) for defendant regarding Beverly's loss-of-consortium claim. The Court of Appeals affirmed, holding that the motor-vehicle exception does not waive governmental

---

[1] The Court of Appeals held that defendant's Gradall is a motor vehicle for the purposes of MCL 691.1405. Defendant challenged this aspect of the Court of Appeals decision in a separate application for leave to appeal, which we denied. 477 Mich 1030 (2007). Thus, this issue is no longer before us.

[2] Specifically, Beverly alleged that she had "been damaged by being denied the normal marital companionship and services from the date of Daniel's physical injuries up to the present, with their [sic] being a reasonable likelihood/probability that some element of same will be permanent."

immunity for loss-of-consortium claims.[3] We granted plaintiffs' application for leave to appeal and directed that this case be argued and submitted with *Kik*.[4]

## B. *KIK*

Plaintiff Rebecca Kik, who was pregnant, was being transported in an ambulance owned by defendant Kinross Charter Township and operated by defendant John-Christopher Sbraccia, a township employee. Sbraccia lost control of the ambulance, which overturned in a ditch. Rebecca suffered injuries and went into premature labor, delivering the baby, Sharon Kik, who allegedly died the same day.[5]

Rebecca and her husband, plaintiff Robert Kik, filed this action individually and as personal corepresentatives of Sharon's estate. Their complaint alleged: (1) Rebecca's personal-injury claim, (2) Robert's claim for loss of consortium arising from Rebecca's injuries, and (3) a wrongful-death claim on behalf of Sharon's estate, including Robert and Rebecca's claims for loss of society and companionship.

---

[3] *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274; 705 NW2d 136 (2005).

[4] 478 Mich 860 (2007).

[5] The original Court of Appeals panel noted that the complaint was not entirely clear regarding whether Sharon was stillborn or born alive and thereafter died. Like the original Court of Appeals panel, we will assume for purposes of our analysis that Sharon was born alive, but our opinion should not be read as resolving that issue if a dispute on the subject arises below. See *Kik v Sbraccia*, 268 Mich App 690, 693 n 2; 708 NW2d 766 (2005) (*Kik I*), vacated in part 268 Mich App 801 (2005).

Defendants moved for partial summary disposition under MCR 2.116(C)(7), arguing that they are immune from all claims other than for bodily injury and property damage. Kinross Charter Township and Kinross Charter Township EMS argued that (1) the motor-vehicle exception does not waive immunity for loss-of-consortium claims and (2) the limitations on the underlying motor-vehicle exception claim apply to the wrongful-death action. Sbraccia argued that he was immune because the governmental agency that employed him was immune. The trial court rejected defendants' arguments and denied the motion. The original Court of Appeals panel affirmed in part and reversed in part.[6] On Robert's loss-of-consortium claim based on Rebecca's injuries, the panel stated that it was bound by the decision in *Wesche* barring such a claim, but that it would have decided the issue differently if *Wesche* had not been controlling.[7] On the wrongful-death claim, the panel held that the wrongful-death act controlled the damages that could be recovered and that the claims for loss of society and companionship arising from the infant's death could proceed despite the language of the motor-vehicle exception. Finally, the panel held that MCL 691.1407(2)(c) permitted plaintiffs to pursue loss-of-consortium claims against Sbraccia if they could establish gross negligence.

---

[6] *Kik I, supra* at 711-712.

[7] The three-judge panel in *Kik I* was bound to follow *Wesche* because it was a prior published decision of the Court of Appeals issued on or after November 1, (continued…)

A special panel of the Court of Appeals convened pursuant to MCR 7.215(J) to resolve the conflict between *Wesche* and the decision of the original panel in *Kik*.[8] The special panel's majority overruled *Wesche* and held that loss-of-consortium claims are permitted under the motor-vehicle exception. Three members of the special panel opined in dissent that the *Wesche* panel had correctly decided the issue.

Defendants applied for leave to appeal in this Court. We granted the application and directed that the case be argued and submitted with *Wesche*.[9]

## II. STANDARD OF REVIEW

"This Court reviews de novo motions for summary disposition. Questions of statutory interpretation are questions of law that are also reviewed de novo by this Court." *Renny v Dep't of Transportation*, 478 Mich 490, 495; 734 NW2d 518 (2007). Our goal in interpreting a statute is to give effect to the Legislature's intent as reflected in the statutory language. *Id*. "When the language of a statute is unambiguous, the Legislature's intent is clear and judicial construction is neither

_____

(…continued)
1990, that had not been reversed or modified by this Court or by a special panel of the Court of Appeals. MCR 7.215(J)(1).

[8] *Kik v Sbraccia*, 272 Mich App 388; 726 NW2d 450 (2006) (*Kik II*).

[9] 478 Mich 861 (2007).

necessary nor permitted." *Griffith v State Farm Mut Automobile Ins Co*, 472 Mich 521, 526; 697 NW2d 895 (2005).

## III. ANALYSIS

### A. THE MOTOR-VEHICLE EXCEPTION DOES NOT WAIVE IMMUNITY FOR LOSS OF CONSORTIUM

The governmental tort liability act (GTLA), MCL 691.1401 *et seq*., provides: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). This grant of immunity is subject to six statutory exceptions.[10]

These cases hinge on the proper interpretation of the motor-vehicle exception, MCL 691.1405, which provides:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

This language is clear: it imposes liability for "bodily injury" and "property damage" resulting from a governmental employee's negligent operation of a

---

[10] The six statutory exceptions are: the highway exception, MCL 691.1402; the motor-vehicle exception, MCL 691.1405; the public-building exception, MCL 691.1406; the proprietary-function exception, MCL 691.1413; the governmental-hospital exception, MCL 691.1407(4); and the sewage-disposal-system-event exception, MCL 691.1417(2) and (3).

7

government-owned motor vehicle. The waiver of immunity is limited to two categories of damage: bodily injury and property damage.

Although the GTLA does not define "bodily injury," the term is not difficult to understand. When considering the meaning of a nonlegal word or phrase that is not defined in a statute, resort to a lay dictionary is appropriate. *Horace v City of Pontiac*, 456 Mich 744, 756; 575 NW2d 762 (1998). The word "bodily" means "of or pertaining to the body" or "corporeal or material, as contrasted with spiritual or mental." *Random House Webster's College Dictionary* (2000). The word "injury" refers to "harm or damage done or sustained, [especially] bodily harm." *Id*. Thus, "bodily injury" simply means a physical or corporeal injury to the body. It is beyond dispute that a loss of consortium is not a physical injury to a body. "A claim for loss of consortium is simply one for loss of society and companionship." *Eide v Kelsey-Hayes Co*, 431 Mich 26, 29; 427 NW2d 488 (1988). Thus, because loss of consortium is a nonphysical injury, it does not fall within the categories of damage for which the motor-vehicle exception waives immunity.

Moreover, loss of consortium is not merely an item of damages. Rather, this Court has long recognized that a claim for loss of consortium is an independent cause of action. *Id.* at 29, citing *Montgomery v Stephan*, 359 Mich 33, 41; 101 NW2d 227 (1960), and Prosser & Keeton, Torts (5th ed), § 125, pp 931-934. Although a loss-of-consortium claim is derivative of the underlying bodily injury, it is nonetheless regarded as a separate cause of action and not

8

merely an item of damages. *Eide*, *supra* at 37. The motor-vehicle exception does not waive immunity from this independent cause of action; the waiver of immunity is limited to claims for bodily injury and property damage.[11]

We reject the *Kik II* panel's conclusion that the motor-vehicle exception creates a threshold for liability that, once met, permits the recovery of damages for loss of consortium. MCL 691.1405 plainly states that governmental agencies "shall be liable for bodily injury and property damage" resulting from the negligent operation of a motor vehicle. It does not state or suggest that governmental agencies are liable for *any* damages once a plaintiff makes a threshold showing of bodily injury or property damage.

Moreover, the Legislature knows how to create a statutory threshold when it wishes to do so. For example, Michigan's no-fault act provides: "A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of a body function, or permanent serious disfigurement." MCL 500.3135(1). The no-fault act thus retains "tort liability for noneconomic loss" if one of the required categories of damage is established. By contrast, the motor-vehicle exception contains no such language. It merely

---

[11] Justice Kelly asserts that our application of the statutory text will lead to absurd results, but we respectfully disagree, particularly in light of the independent nature of a loss-of-consortium claim. We simply are not convinced that the Legislature's decision to waive immunity only for bodily-injury and property-damage claims, but not for independent loss-of-consortium claims, is absurd.

9

provides that governmental agencies "shall be liable for bodily injury and property damage" and says nothing to suggest that a separate cause of action, such as one for loss of consortium, may be asserted once a threshold of "bodily injury" has been met.

The *Kik I* panel's reliance on *Endykiewicz v State Hwy Comm*, 414 Mich 377; 324 NW2d 755 (1982), was misplaced. In *Endykiewicz*, this Court found the language of the highway exception, MCL 691.1402(1), to be ambiguous and thus read it *broadly* to permit recovery for loss of companionship and society in a wrongful-death action. The *Endykiewicz* Court stated that the highway exception is "an *expansive* provision defining the liability of a governmental agency." *Id*. at 389 (emphasis added).

We reject the analysis in *Endykiewicz* because the statutory language at issue here is not ambiguous. As we have explained, the statutory text permits recovery of damages only for bodily injury and property damage, and loss of consortium does not fall within either of those categories.

For these reasons, we hold that a loss of consortium is not a "bodily injury" for which the motor-vehicle exception waives immunity. Because no statutory exception applies, the governmental agencies in these cases are entitled to governmental immunity on the plaintiffs' loss-of-consortium claims.[12]

---

[12] Justice Weaver concludes that the motor-vehicle exception to governmental immunity, MCL 691.1405, "does not expressly abrogate the right to claim damages for loss of consortium under Michigan's common law . . . ." *Post*

(continued…)

10

## B.  THE WRONGFUL-DEATH ACT DOES NOT EXPAND
## THE WAIVER OF IMMUNITY

The wrongful-death act does not waive a governmental agency's immunity beyond the limits set forth in the underlying statutory exception.  The three-judge panel in *Kik I* ruled that even if the motor-vehicle exception does not waive immunity, the wrongful-death act nonetheless allows a claim for loss of consortium.  This conclusion contravenes both the language of the wrongful-death act and this Court's caselaw.

At the applicable time, MCL 600.2922(1) provided:

> Whenever the death of a person or injuries resulting in death shall be caused by wrongful act, neglect, or fault of another, and *the act, neglect, or fault is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages*, the person who or the corporation that would have been liable, if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death was caused under circumstances that constitute a felony.  [Emphasis added.]

Another provision of the wrongful-death act stated:

---

(…continued)

at 4.  However, she disregards MCL 691.1407(1), which states: "Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function."  Because governmental agencies are immune from tort liability unless one of the statutory exceptions applies, and because the motor-vehicle exception applies only to liability for "bodily injury and property damage," governmental agencies are not liable for loss of consortium.  Justice Weaver's dissent entirely misapprehends the nature of the burden on a party seeking to avoid governmental immunity.

11

> In every action under this section, the court or jury may award damages as the court or jury shall consider fair and equitable, under all the circumstances including reasonable medical, hospital, funeral, and burial expenses for which the estate is liable; reasonable compensation for the pain and suffering, while conscious, undergone by the deceased person during the period intervening between the time of the injury and death; and damages for the loss of financial support and the *loss of the society and companionship* of the deceased. [MCL 600.2922(6) (emphasis added).]

The *Kik I* panel reasoned that even if the motor-vehicle exception does not waive immunity, the wrongful-death act expressly authorizes damages for loss of society and companionship. But that analysis fails to give effect to language in MCL 600.2922(1) making liability contingent on whether the party injured would have been entitled to maintain an action and recover damages if death had not ensued.

In *Kik*, the motor-vehicle exception would not have entitled plaintiffs to maintain an action and recover damages for loss of consortium if Sharon's death had not ensued. As discussed, the motor-vehicle exception does not waive immunity for loss of consortium because "bodily injury" does not encompass such claims. Thus, because plaintiffs would not have been entitled to pursue a loss-of-consortium claim if Sharon's death had not ensued, MCL 600.2922(1) does not authorize such a claim in this wrongful-death action.

Our textual analysis is supported by caselaw stating that the wrongful-death act is essentially a "filter" through which the underlying claim may proceed. In *Hardy v Maxheimer*, 429 Mich 422, 439; 416 NW2d 299 (1987), this Court noted that the survival act, MCL 600.2921, provides: "All actions and claims survive

12

death.  Actions on claims for injuries which result in death shall not be prosecuted after the death of the injured person except pursuant to" the wrongful-death act. The *Hardy* Court explained:

> We, therefore, believe that since 1846 the law in Michigan has evolved to the point where it may now be held that the right to recovery for wrongful death "survives by law." *Consequently, a wrongful death action will no longer be regarded as one created at the time of death, but as one that "survives by law."* We believe this interpretation fosters the legislative purpose behind both our [MCL 600.5852] saving provision and the current wrongful death act, MCL 600.2922[.]  [*Id.* at 440 (emphasis added).]

Because an underlying claim "survives by law" and must be prosecuted under the wrongful-death act, this Court has held that any statutory or common-law limitations on the underlying claim apply to a wrongful-death action.  In *Jenkins v Patel*, 471 Mich 158; 684 NW2d 346 (2004), we held that the medical-malpractice cap on noneconomic damages applies in a wrongful-death action when the underlying claim is for medical malpractice.  This Court explained:

> Clearly, the wrongful death act is not the only act that is pertinent in a wrongful death action.  "The mere fact that our legislative scheme requires that suits for tortious conduct resulting in death be filtered through the so-called 'death act', [MCL 600.2922], does not change the character of such actions except to expand the elements of damage available."  *Hawkins* [*v Regional Med Laboratories*, *PC*, 415 Mich 420, 436; 329 NW2d 729 (1982).]  That is, a wrongful death action grounded in medical malpractice is a medical malpractice action in which the plaintiff is allowed to collect damages related to the death of the decedent.  [*Id.* at 165-166.]

Although MCL 600.2922(6) sets forth the damages available in wrongful-death actions, we rejected the plaintiff's argument in *Jenkins* that the medical-malpractice noneconomic-damages cap does not apply to a wrongful-death action:

> Plaintiff argues that [MCL 600.2922(6)] governs damages in wrongful death claims, in such a manner that other provisions are rendered inapplicable. However, this Court has held that other statutory and common-law limitations on the amount of damages apply to wrongful death actions. For instance, comparative negligence principles and the collateral source setoff rule, MCL 600.6303(1), apply to wrongful death actions. *Solomon v Shuell*, 435 Mich 104; 457 NW2d 669 (1990); *Rogers v Detroit*, 457 Mich 125; 579 NW2d 840 (1998), overruled on other grounds by *Robinson v Detroit*, 462 Mich 439; 613 NW2d 307 (2000). [*Id.* at 171.]

Indeed, this Court has long held that a statutory or common-law limitation on the underlying claim applies to a wrongful-death action. In *Maiuri v Sinacola Constr Co*, 382 Mich 391; 170 NW2d 27 (1969), the plaintiffs' son was killed in the course of his employment. The plaintiffs filed a wrongful-death action against the employer. Quoting the language of MCL 600.2922(1), this Court explained: "As a condition to a successful action under the wrongful death act, it must be shown that the decedent, if death had not ensued, could have maintained an action and recovered damages for his injuries." *Id*. at 395. This Court concluded:

> Since the cause of action of a proper plaintiff under the wrongful death act is a derivative one in that the personal representative of the deceased stands in his shoes and is required to show that the deceased could have maintained the action if death had not ensued, and since, in this case, the decedent would have been barred from an action for injuries resulting in death because of the exclusive remedy provisions of the workmen's compensation act, the trial court did not err in granting an accelerated judgment for the defendant. [*Id*. at 396.]

14

See also *Mehegan v Boyne City, G & A R Co*, 178 Mich 694; 141 NW 905 (1913) (holding that the decedent's execution of a release of liability barred his widow's recovery in a wrongful-death action).

The same reasoning applies in *Kik*. If Sharon had not died, the claims available under the motor-vehicle exception would have been limited to those for "bodily injury" and "property damage." Because a loss of consortium is not a "bodily injury," no such claim could have been pursued had her death not ensued. Thus, the limitation on damages in the motor-vehicle exception must apply in this wrongful-death action.

In reaching a contrary conclusion, the Court of Appeals in *Kik I* relied on *Endykiewicz*. But *Endykiewicz* reflects a repudiated understanding of the wrongful-death act. The *Endykiewicz* Court stated that a wrongful-death action "exists not as 'a cause of action which survives' the decedent, but as 'a new action * * * which can be brought, not for the benefit of the estate, but solely for the benefit of the beneficiaries named in the statute.'" *Id*. at 387 (citations omitted). In light of *Hardy* and *Jenkins*, however, it is now clear that the underlying claim survives by law and that the limitations in the underlying cause of action apply to the wrongful-death action. Because of this, we believe that *Hardy* silently overruled the analysis of the wrongful-death act in *Endykiewicz*. For this reason,

we now explicitly hold that *Endykiewicz* is overruled to the extent that it is inconsistent with our decision.[13]

Accordingly, we hold that the wrongful-death act does not expand the waiver of immunity set forth in the motor-vehicle exception to include loss-of-consortium claims.

### C.  MCL 691.1407(2)(c) DOES NOT SHIELD GOVERNMENTAL EMPLOYEES FROM LOSS-OF-CONSORTIUM CLAIMS

Finally, we agree with the *Kik I* panel that governmental employees are not immune from loss-of-consortium claims if the requirements of MCL 691.1407(2)(c) are met.  Because he is a governmental employee, Sbraccia's liability is premised not on the motor-vehicle exception, but on MCL 691.1407(2)(c).  That provision states that a governmental employee is immune from tort liability if his "conduct does not amount to gross negligence that is the proximate cause of the injury or damage."  Unlike the motor-vehicle exception for governmental agencies, the gross-negligence exception for employees does not limit the waiver of immunity to cases of bodily injury or property damage.

---

[13] Our decision to overrule *Endykiewicz* is warranted under the doctrine of stare decisis, as set forth in *Robinson*, *supra* at 463-464.  *Endykiewicz* was incorrectly decided because it erroneously treated a wrongful-death claim as a "new" cause of action rather than a continuation of the decedent's underlying claim.  *Endykiewicz, supra* at 387.  Moreover, overruling *Endykiewicz* will not lead to practical real-world dislocations.  On the contrary, adhering to a decision that contravenes well-settled principles of our jurisprudence would undermine the interest in a stable and predictable body of law, as demonstrated by the *Kik I* panel's error in relying on *Endykiewicz.*

Defendants argue that an employee cannot be subject to liability if the governmental agency itself is immune. But this argument has no basis in the text of the GTLA. The Legislature has prescribed different standards for determining whether immunity is afforded to governmental agencies and employees. It therefore follows that the extent of their respective immunities may not always be coextensive. As the *Kik I* panel explained:

> The Legislature chose to use different standards to determine the immunity of the governmental entities and the governmental employee. Such a choice may have the effect in certain cases that the employee may not be immune when the governmental employer is immune. The Legislature could have avoided such a situation by providing in MCL 691.1407(2) that an individual employee is immune whenever the governmental entity is immune, but it did not. Whether it makes sense to hold the individual employee liable in a situation in which the governmental entity itself is immune is a question to be addressed by the Legislature, not this Court. The Legislature presumably had a reason to treat governmental employees and governmental entities differently, and it would be presumptuous of us to void that legislative determination. [*Kik I*, *supra* at 697.

The *Kik I* panel's analysis of this issue is sound. Because MCL 691.1407(2)(c) does not limit its waiver of immunity to bodily injury and property damage, we reject defendants' argument on this issue.[14]

---

[14] We do not address whether Sbraccia is entitled to summary disposition on other grounds, e.g., that plaintiffs have failed to establish that Sbraccia acted with gross negligence as defined in the applicable version of MCL 691.1407(2)(c) or that his gross negligence was "the proximate cause" of the injuries or death under the standard set forth in *Robinson*. Those issues are not before us.

17

## IV. CONCLUSION

For these reasons, we hold that loss of consortium is not a bodily injury for which governmental immunity is waived under the motor-vehicle exception. Moreover, the wrongful-death act does not authorize a loss-of-consortium claim when a plaintiff would not have been entitled to seek damages for that claim under the motor-vehicle exception if a death had not ensued. Finally, MCL 691.1407(2) does not shield governmental employees from liability for loss-of-consortium damages.

Accordingly, we affirm the judgment of the Court of Appeals in *Wesche*, affirm in part and reverse in part the judgment of the Court of Appeals in *Kik*, and remand both cases to the trial courts for further proceedings not inconsistent with this opinion.

Maura D. Corrigan
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

S T A T E   O F   M I C H I G A N

SUPREME COURT

DANIEL JOHN WESCHE and BEVERLY
WESCHE,

       Plaintiffs-Appellants,

v                                                                                    No. 129282

MECOSTA COUNTY ROAD
COMMISSION,

       Defendant-Appellee.

_____

REBECCA KIK and ROBERT KIK,
Individually and as Personal
Corepresentatives of the ESTATE of
SHARON ANN LEELANI KIK,

       Plaintiffs-Appellees,

v                                                                                    No. 132849

JOHN-CHRISTOPHER SBRACCIA, KINROSS
CHARTER TOWNSHIP EMS, and KINROSS
CHARTER TOWNSHIP,

       Defendants-Appellants.

_____

WEAVER, J.  (*concurring in part and dissenting in part*).

      I concur only in the decision by the majority of four (Chief Justice Taylor

and Justices Corrigan, Young, and Markman) that, in a negligence action against a

governmental employee, the immunity available to governmental employees under

the motor-vehicle exception is not available to a governmental employee who was

grossly negligent and that a plaintiff can seek recovery for loss-of-consortium damages.

I dissent from the majority of four's decision that the motor-vehicle exception to governmental immunity, MCL 691.1405, prohibits a claim for loss of consortium against a governmental agency. Because the statute does not bar a claim for loss of consortium as long as the plaintiff seeking damages for loss of consortium can show that the injured party sustained some legally cognizable harm or injury, I would hold that such damages may be awarded, and I dissent from that part of the majority opinion that holds otherwise.

Because the right of a plaintiff who was not physically injured to recover from a tortfeasor for loss of consortium as a result of injuries sustained by the injured plaintiff is well established in Michigan's common law, I dissent from the majority of four's decision that loss-of-consortium damages are not available in a claim brought under the motor-vehicle exception to governmental immunity.

A claim for loss of consortium is a separate legal claim for damages suffered not by the injured party, but by a spouse, parent, or child who claims damages for the loss of the injured party's society and companionship. It is a derivative claim in that it does not arise at all unless the injured party has sustained some legally cognizable harm or injury. The right of a person to recover from a

2

tortfeasor for loss of consortium as a result of injuries sustained by his or her spouse is well established in Michigan's common law.[1]

A statute that expressly extinguishes a right established at common law is a proper exercise of legislative power; however, a statute in derogation of the common law must be strictly construed.[2] Importantly, such a statute will not be extended by implication to abrogate an established rule of common law.[3]

The motor-vehicle exception to governmental immunity, MCL 691.1405, provides:

> Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner, as defined in Act No. 300 of the Public Acts of 1949, as amended, being sections 257.1 to 257.923 of the Compiled Laws of 1948.

The statute does not define "bodily injury," nor does it expressly state that a plaintiff who was not physically injured may not recover derivative damages for loss of consortium. The majority mistakenly alleges, *ante* at 11 n 12, my supposed disregard of MCL 691.1407(1), which states: "*Except as otherwise provided in this act*, a governmental agency is immune from tort liability if the governmental

---

[1] *Rusinek v Schultz, Snyder & Steele Lumber Co,* 411 Mich 502, 504; 309 NW2d 163 (1981).

[2] *Id.* at 507-508.

[3] *Id.* at 508.

3

agency is engaged in the exercise or discharge of a governmental function." (Emphasis added.)

There is no such disregard. As indicated by the language emphasized in the statute, it appears that it is in fact the majority that "misapprehends" the statute because MCL 691.1405 *is one of the exceptions to governmental immunity*. MCL 691.1405 explicitly states that governmental agencies "*shall be liable for bodily injury* and property damage arising from the negligent operation" of a governmental vehicle. Thus, as long as the physically injured party can establish a legally cognizable claim for bodily injury, a plaintiff is entitled to recovery for all damages flowing from that injury, *including damages for loss of consortium.* Evidently, the majority does not understand the actual and inseparable connection between "bodily injury" and the damages that flow from that injury. The governmental agency is liable for damages that flow from bodily injury, including loss-of-consortium damages, which flow from bodily injury just as damages for medical expenses and lost wages also flow from a bodily injury.

Because the statute does not expressly abrogate the right to claim damages for loss of consortium under Michigan's common law, the majority of four errs in abolishing this right by implication. The majority of four does so by creatively implying such a prohibition in its own definition of "bodily injury." There is nothing in the language of the statute justifying the majority of four's creative construction, and the majority's decision to construe the language of the statute in

4

this manner is another example of the majority of four's judicial activism by unrestrained statutory interpretation.

Elizabeth A. Weaver
Michael F. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

DANIEL JOHN WESCHE and BEVERLY
WESCHE,

       Plaintiffs-Appellants,

v                                          No. 129282

MECOSTA COUNTY ROAD
COMMISSION,

       Defendant-Appellee.

_____

REBECCA KIK and ROBERT KIK,
Individually and as Personal
Corepresentatives of the ESTATE of
SHARON ANN LEELANI KIK,

       Plaintiffs-Appellees,

v                                          No. 132849

JOHN-CHRISTOPHER SBRACCIA, KINROSS
CHARTER TOWNSHIP EMS, and KINROSS
CHARTER TOWNSHIP,

       Defendants-Appellants.

_____

KELLY, J. (*concurring in part and dissenting in part*).

       These two cases require us to decide two issues. The first concerns the spouse or parent of an individual who sustains bodily injury in a motor vehicle collision. The issue is whether that person can recover damages from a governmental agency for loss of consortium under the motor vehicle exception to

governmental immunity.[1] The majority decides that a person cannot recover these damages. I disagree. When a loss of consortium claim arises directly out of bodily injury suffered in a collision, I would hold that such damages are recoverable. Accordingly, I dissent from the part of the majority opinion that holds to the contrary.

The other issue is whether a claim for loss of consortium can be asserted against a governmental employee. The majority decides that the employee is liable for such damages "if the plaintiff can satisfy all the requirements set forth in the gross-negligence exception to the governmental immunity of employees."[2] Because I agree that governmental employees can be held liable for loss of consortium, I concur in the result reached in that part of the majority opinion.

FACTS

*WESCHE v MECOSTA COUNTY ROAD COMMISSION*[3]

Plaintiff Daniel Wesche stopped his vehicle at a red light. He was then struck from behind by a Gradall hydraulic excavator owned by defendant Mecosta County Road Commission. As a result of the collision, he suffered injury to his spine. Plaintiff Beverly Wesche, Daniel's wife, was not present when the incident occurred.

---

[1] MCL 691.1405.

[2] *Ante* at 2.

[3] *Wesche v Mecosta Co Rd Comm*, 267 Mich App 274; 705 NW2d 136 (2005).

2

Plaintiffs brought suit against defendant, asserting numerous causes of action. Among their claims was one brought by Beverly for loss of consortium. Defendant moved for summary disposition on this claim. The trial court granted the motion, concluding that the claim was barred by governmental immunity. In a published opinion, the Court of Appeals affirmed the decision.

## KIK v SBRACCIA[4]

A pregnant Rebecca Kik was being transported in an ambulance owned by defendant Kinross Charter Township. Defendant John-Christopher Sbraccia, an employee of defendant Kinross Charter Township Emergency Medical Services, was driving the ambulance. He lost control of it and overturned in a ditch. As a result of the crash, Rebecca sustained numerous injuries. She also went into premature labor, causing her to deliver her daughter, Sharon Kik. Sharon died the same day.

Plaintiffs Rebecca and Robert Kik, who is Rebecca's husband and Sharon's father, brought suit against the township, the emergency medical service, and Sbraccia. Included among the causes of action were claims for loss of consortium. One was filed on behalf of Robert seeking damages for the injuries suffered by his wife. And one was filed on behalf of Robert and Rebecca, because of the death of their daughter.

---

[4] *Kik v Sbraccia*, 268 Mich App 690; 708 NW2d 766 (2005) (*Kik I*).

Defendants moved for summary disposition, claiming that governmental immunity barred the loss of consortium claims. The trial court denied the motion. The Court of Appeals reversed with respect to the denial of summary disposition for the governmental agencies on Robert's loss of consortium claim arising out of the injuries suffered by his wife. The Court determined regarding this claim that it was bound by its prior decision in *Wesche* and had to reverse the denial of summary disposition to the governmental agencies.[5] But the panel also concluded that *Wesche* had been incorrectly decided and declared that it would have decided the issue differently were it not for *Wesche*.[6] The panel reasoned that *Wesche* had confused the concepts of liability and damages.[7] It concluded that the *Wesche* panel had erred because, once a plaintiff has shown bodily injury, liability is established and the plaintiff may recover whatever damages arise from the bodily injury.[8] And it would have found that loss of consortium is one such damage.[9]

After the *Kik I* panel determined that *Wesche* had been incorrectly decided, a special panel of the Court of Appeals was convened. A majority of the special

---

[5] *Id.* at 711-712.

[6] *Id.* at 711.

[7] *Id.* at 709.

[8] *Id.* at 710.

[9] *Id.*

4

panel concluded that *Wesche* had been incorrectly decided and overruled it.[10]  In *Kik II,* the majority expressly adopted the *Kik I* panel's reasoning as its own.[11]

ANALYSIS

After the special panel issued its decision in *Kik II*, we granted leave to appeal in both *Kik* and *Wesche* and directed that the two cases be argued together.[12]  Now, the Court decides that loss of consortium is unavailable to the spouse or parent of an individual injured in a collision under the motor vehicle exception to government immunity.  The majority also decides that a governmental employee whose gross negligence causes bodily injury is subject to personal liability for loss of consortium.  I agree with the second decision, but I part company with the majority on the first.

The motor vehicle exception[13] to governmental immunity provides: "Governmental agencies shall be liable for bodily injury and property damage resulting from the negligent operation by any officer, agent, or employee of the governmental agency, of a motor vehicle of which the governmental agency is owner . . . ."

---

[10] *Kik v Sbraccia*, 272 Mich App 388, 391; 726 NW2d 450 (2006) (*Kik II*).

[11] *Id.*

[12] *Wesche v Mecosta Co Rd Comm*, 478 Mich 860 (2007); *Kik v Sbraccia*, 478 Mich 861 (2007).

[13] MCL 691.1405.

Contrary to the majority decision, this exception does not state that plaintiffs can recover damages only for bodily injury or property damage.[14] Instead, the exception provides that governmental agencies are "liable for bodily injury and property damage." Importantly, the statute speaks of liability, but it says nothing about damages. In *Kik I*, the Court of Appeals correctly recognized this point and aptly summarized its effect:

> [The motor vehicle exception] concerns the issue of liability and describes one of the conditions for which the government does not enjoy immunity: when the negligent operation of a motor vehicle owned by a governmental agency causes bodily injury or property damage. The statute does not limit or otherwise establish the types of damages that are recoverable from the government when liability is established. For that matter, the statute does not address, in either terms of inclusion or exclusion, who may recover damages arising from such bodily injury. In other words, the appropriate reading of MCL 691.1405 is that the government is not immune from suit when the negligent operation of a government-owned motor vehicle results in bodily injury. Once such liability is established, the statute is silent regarding damages, meaning that the plaintiff may recover whatever damages arise from the bodily injury.[15]

Accordingly, under a proper interpretation of the motor vehicle exception, plaintiffs establish liability by showing that the negligent operation of a government-owned motor vehicle resulted in bodily injury. But once that liability has been established, plaintiffs can recover all damages that arise from the bodily

---

[14] This Court reviews issues of statutory interpretation de novo. *Brown v Detroit Mayor*, 478 Mich 589, 593; 734 NW2d 514 (2007).

[15] *Kik I*, 268 Mich App at 709-710.

6

injury. "Had the Legislature intended to prohibit the recovery of consequential or incidental damages which arise directly from the infliction of injury to person or property at the hands of the government, it would have affirmatively done so in specific language . . . ."[16]

Loss of consortium damages derive from "some other legally cognizable harm suffered by the individual whose consortium the plaintiff has lost as a result of that harm."[17] Michigan law has long allowed recovery of these damages for injuries to a spouse.[18] And the wrongful death act allows parents to bring a claim for loss of companionship based on the death of their child.[19]

In these cases, the "other legally cognizable harm" from which plaintiffs' loss of consortium claims derive is the bodily injury suffered by the spouse or child in the motor vehicle collision. In *Wesche*, plaintiff Beverly Wesche's loss of consortium claim arose from the injuries suffered by her husband in the motor vehicle collision. In *Kik*, plaintiff Robert Kik's loss of consortium claims are based on the injuries to his wife and the death of his child, both of which were

---

[16] *Endykiewicz v State Hwy Comm*, 414 Mich 377, 389; 324 NW2d 755 (1982). In *Endykiewicz,* a unanimous Court suggested that the exceptions to governmental immunity should be construed expansively in order to accomplish the legislative purpose of "provid[ing] an opportunity to obtain redress from the responsible governmental agency for those injured as a result of the negligence of the government . . . ." *Id.* at 388-389. This appears to me to be the appropriate rule when interpreting an exception to governmental immunity.

[17] 31 Michigan Law & Practice (2d ed), Torts, § 72, p 179.

[18] See *Montgomery v Stephan*, 359 Mich 33, 49; 101 NW2d 227 (1960).

[19] MCL 600.2922(6).

caused by the motor vehicle collision. And plaintiff Rebecca Kik's claim is based on the death of her child. Accordingly, each plaintiff can recover loss of consortium damages because the damages arose directly from the bodily injury suffered in a motor vehicle collision.

The correctness of finding that the motor vehicle exception allows recovery for loss of consortium is confirmed when one examines the motor vehicle exception in light of the highway defects exception. In relevant part, the highway defects exception provides:

> A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency.[20]

This exception expressly limits recovery to the "person who sustains bodily injury or damage to his or her property." The Legislature used express limiting language in this exception, but did not use such language in the motor vehicle exception. This is strong evidence that the Legislature did not intend to limit recovery under the motor vehicle exception to the individual who actually suffered bodily injury.[21]

---

[20] MCL 691.1402(1).

[21] It could be argued that the difference in the language used in the highway defects exception and the motor vehicle exception can be explained by this fact: The highway defects exception has been amended twice, whereas the motor vehicle exception has never been amended. However, this fact does not explain the difference in language, since each version of the highway defects exception

(continued…)

8

Furthermore, the majority's interpretation of the exception will lead to absurd results. The damages recoverable for loss of consortium, like those for emotional distress and lost wages, can derive from the bodily injury suffered, as in this case, in a motor vehicle collision. Did the Legislature intend to single out loss of consortium damages, of all the damages recoverable for bodily injury from a collision, as excluded from the remedy that the statute confers? Absent any reason to believe that the Legislature intended such a result, this absurd interpretation must be rejected.[22]

CONCLUSION

I believe that the majority errs by deciding that loss of consortium damages cannot be recovered under the motor vehicle exception to governmental immunity. The exception establishes only a threshold for liability and does not limit the type of damages that may be recovered once liability is established. For that reason, I would hold that loss of consortium damages can be recovered in these two cases.

Marilyn Kelly<br>
Michael F. Cavanagh

---

(…continued)
has included language strictly limiting recovery to the person suffering bodily injury.

[22] See *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998); see also *Cameron v Auto Club Ins Ass'n*, 476 Mich 55, 78-79; 718 NW2d 784 (2006) (Markman, J., concurring); *id*. at 103 n 12 (Cavanagh, J., dissenting); *id*. at 104 n 1 (Weaver, J., dissenting); *id.* at 109-130 (Kelly, J., dissenting).